## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Select Snacks, Inc., *et al.*,[1] | ) | Case No. 07-18769 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors and Debtors in Possession. | ) | Honorable Pamela S. Hollis |

**FINAL ORDER AUTHORIZING DEBTORS IN POSSESSION
TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTION 364
OF THE BANKRUPTCY CODE, PROVIDING ADEQUATE PROTECTION AND
GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS** *[Eod10]*

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (the "Final Order") pursuant to sections 105, 361 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing them to: (i) obtain post-petition financing pursuant to section 364 of the Bankruptcy Code from LaSalle Business Credit, LLC (the "Post-Petition Lender"), subject to the terms and conditions set forth herein; (ii) grant security interests, mortgages and other liens and superpriority claims to the Post-Petition Lender (including a priority lien pursuant to section 364(c)(1) of the Bankruptcy Code, and claims, liens and security interests pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code); and (iii) grant security interests, mortgages and other liens and superpriority claims in order to provide adequate protection to and for the benefit of the Prepetition Lender (as hereinafter defined), all as more fully set forth herein, and upon the proceedings held before this Court and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS WITH RESPECT TO PARAGRAPHS (J), (O) AND (P) AND THE PARTIES HEREBY STIPULATE TO THE BALANCE:

---

[1] The Debtors are the following entities: Jays Foods, Inc. ("Jays") and Select Snacks, Inc. ("Select").

A.   On October 11, 2007 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code.  The Debtors are now operating their

businesses and managing their properties as debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  There is presently no pending request or motion for

appointment of a trustee or examiner.  On October 17, 2007, the United States Trustee appointed

the Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases (the

"Chapter 11 Cases").

B.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Cases and the

Motion in this district is proper pursuant to 28 U.S.C. § 1408.

C.   Pursuant to the Loan and Security Agreement dated April 20, 2004 (as amended,

modified or supplemented, the "Jays Prepetition Loan Agreement"), by and between Jays Foods

Acquisition, Inc., as borrower (the "Jays Borrower"), and LaSalle Business Credit, LLC, as agent

for itself and all other lenders from time to time parties to the Jays Prepetition Loan Agreement

(the "Prepetition Lender"), and related agreements and documents (collectively, with the Jays

Prepetition Loan Agreement, the "Jays Prepetition Financing Documents"), the Prepetition

Lender has made certain loans and financial accommodations to the Jays Borrower to, *inter alia*,

fund the Jays Borrower's operations. The Jays Borrower's obligations to the Prepetition Lender

under the Jays Prepetition Loan Agreement were and are guaranteed by Select Snacks, Inc.

("Select") and Select Snacks Holding Company, Inc. ("Select Parent" and together with Select

Guarantor, the "Jays Guarantors").  The Debtors believe that, as of the Petition Date, the

aggregate amount of approximately $10,213,000 was due and owing in respect of loans made by

the Prepetition Lender to the Jays Borrower pursuant to the Jays Prepetition Financing

2

Documents, exclusive of accrued and unpaid interest, fees, costs, expenses and other charges incurred in connection therewith as provided in the Jays Prepetition Financing Documents (all of the foregoing, the "Jays Prepetition Indebtedness").

D.     To secure the Jays Prepetition Indebtedness, the Jays Borrower granted to and for the benefit of the Prepetition Lender, pursuant to the Jays Prepetition Financing Documents, security interests in substantially all accounts, chattel paper, instruments, documents, general intangibles, inventory, goods, equipment, investment property, deposit accounts, bank accounts, deposits and cash, all letter-of-credit rights, commercial tort claims, software and computer programs, including all additions, substitutions, replacements, products, and proceeds thereof; Select granted to and for the benefit of the Prepetition Lender, pursuant to the Guaranty and Security Agreement dated as of June 19, 2006 made by Select, security interests in substantially all accounts, chattel paper, instruments, documents, general intangibles, inventory, goods, equipment, investment property, deposit accounts, bank accounts, deposits and cash, all letter-of-credit rights, commercial tort claims, software and computer programs, including all additions, substitutions, replacements, products, and proceeds thereof and, pursuant to the Real Property Mortgage dated as of June 19, 2006, a mortgage on real property located at 125 Peaceley Street, Jeffersonville, Indiana; and Select Parent granted to and for the benefit of the Prepetition Lender, pursuant to the Guaranty and Security Agreement dated as of June 19, 2006 made by Select Parent, security interests in substantially all accounts, chattel paper, instruments, documents, general intangibles, inventory, goods, equipment, investment property, deposit accounts, bank accounts, deposits and cash, all letter-of-credit rights, commercial tort claims, software and computer programs, including all additions, substitutions, replacements, products, and proceeds thereof (all of the foregoing collateral generally described above, and all proceeds thereof, shall

3

be referred to herein collectively as the "Jays Prepetition Collateral" and such liens shall be referred to herein as the "Jays Prepetition Lender's Liens").

E.      Pursuant to the Loan and Security Agreement dated June 16, 2006 (as amended, modified or supplemented, the "Select Prepetition Loan Agreement" and together with the Jays Prepetition Loan Agreement, the "Prepetition Loan Agreements"), by and between Select, as borrower (the "Select Borrower" and together with the Jays Borrower, the "Borrowers"), and the Prepetition Lender, as agent for itself and all other lenders from time to time parties to the Select Prepetition Loan Agreement, and related agreements and documents (collectively, with the Select Prepetition Loan Agreement, the "Select Prepetition Financing Documents" and together with the Jays Prepetition Financing Documents, the "Prepetition Financing Documents"), the Prepetition Lender has made certain loans and financial accommodations to the Select Borrower to, *inter alia*, fund the Select Borrower's operations. The Select Borrower's obligations to the Prepetition Lender under the Select Prepetition Loan Agreement were and are guaranteed by the Select Parent, the Jays Borrower and Jays Holding Company, Inc. ("Jays Parent" and together with Select Parent and Jays Borrower, the "Select Guarantors" and, collectively, with the Jays Guarantors, the "Guarantors"). The Debtors believe that, as of the Petition Date, the aggregate amount of approximately $9,918,000 was due and owing in respect of loans made by the Prepetition Lender to the Select Borrower pursuant to the Select Prepetition Financing Documents, exclusive of accrued and unpaid interest, fees, costs, expenses and other charges incurred in connection therewith as provided in the Select Prepetition Financing Documents (all of the foregoing, the "Select Prepetition Indebtedness" and together with the Jays Prepetition Indebtedness, the "Prepetition Indebtedness"). For purposes of this Final Order, each of the terms "Post-Petition Loans" (as hereinafter defined) and "Prepetition Indebtedness" shall include

4

the principal of, and all interest, fees, expenses and other charges owing in respect of, such loans,

indebtedness, or financial accommodations, including any reasonable attorneys', accountants',

and financial advisors' fees that are chargeable or reimbursable under the relevant agreements

relating to such loans or other indebtedness).

     F.     To secure the Select Prepetition Indebtedness, the Select Borrower granted to and

for the benefit of the Prepetition Lender, pursuant to the Select Prepetition Financing

Documents, security interests in substantially all accounts, chattel paper, instruments,

documents, general intangibles, inventory, goods, equipment, investment property, deposit

accounts, bank accounts, deposits and cash, all letter-of-credit rights, commercial tort claims,

software and computer programs, including all additions, substitutions, replacements, products,

and proceeds thereof; Jays Borrower granted to and for the benefit of the Prepetition Lender,

pursuant to the Guaranty and Security Agreement dated as of June 19, 2006 made by Jays

Borrower, security interests in substantially all accounts, chattel paper, instruments, documents,

general intangibles, inventory, goods, equipment, investment property, deposit accounts, bank

accounts, deposits and cash, all letter-of-credit rights, commercial tort claims, software and

computer programs, including all additions, substitutions, replacements, products, and proceeds

thereof; and Jays Parent granted to and for the benefit of the Prepetition Lender, pursuant to the

Guaranty and Security Agreement dated as of June 19, 2006 made by Jays Parent, security

interests in substantially all accounts, chattel paper, instruments, documents, general intangibles,

inventory, goods, equipment, investment property, deposit accounts, bank accounts, deposits and

cash, all letter-of-credit rights, commercial tort claims, software and computer programs,

including all additions, substitutions, replacements, products, and proceeds thereof (all of the

foregoing collateral generally described above, and all proceeds thereof, shall be referred to

herein collectively as the "Select Prepetition Collateral" and together with the Jays Prepetition

Collateral, the "Prepetition Collateral"); such liens shall be referred to herein as the "Select

Prepetition Lender's Liens" and together with the Jays Prepetition Lender's Liens, the

"Prepetition Lender's Liens").

     G.     Pursuant to the terms of the Prepetition Financing Documents, the Prepetition

Lender and the Borrowers agreed that the Borrowers would direct all of their account debtors to

make all payments on the accounts directly to a post office box (the "Lock Box"), designated by

and under the exclusive control of the Prepetition Lender, and the Borrowers would establish

accounts (the "Lock Box Accounts") with the Prepetition Lender into which the Borrowers

would immediately deposit all payments received by the Borrowers. The Prepetition Lender

would then apply the whole or any part of such collections or proceeds against the Prepetition

Indebtedness as the Prepetition Lender determined at its discretion.

     H.     The Debtors believe that all cash of the Debtors wherever located on the Petition

Date represented either proceeds of loans from the Prepetition Lender to the Debtors or proceeds

of Prepetition Collateral. Pursuant to the Prepetition Financing Documents, the Debtors believe

that the Prepetition Lender has a first, valid and perfected security interest in and lien on all cash

of the Debtors, including, but not limited to, those funds held in the Lock Box Accounts on the

Petition Date, and that these funds constitute "cash collateral" within the meaning of section

363(a) of the Bankruptcy Code.

     I.     The Debtors believe that the Prepetition Lender's Liens constitute valid, binding,

enforceable, and perfected first-priority liens subject only to liens described in or otherwise

permitted by the Prepetition Loan Agreements, and are not subject to avoidance or subordination

(except insofar as such liens are subordinated to certain liens permitted by the Prepetition Loan

6

Agreements that are valid, binding, enforceable and in existence on the Petition Date and the
"Carve-Out" (as hereinafter defined) in accordance with the provisions of this Final Order)
pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors believe: (1)
that the Prepetition Indebtedness constitutes legal, valid and binding obligations of the Debtors,
enforceable in accordance with its terms (other than in respect of the stay of enforcement arising
from Bankruptcy Code section 362); (2) that no offsets, defenses, or counterclaims to the
Prepetition Indebtedness exist; and (3) that no portion of the Prepetition Indebtedness is subject
to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy
law.

J.      An immediate and critical need exists for the Debtors to obtain funds in order to
continue the operation of their businesses. Without such funds, the Debtors will not be able to
pay their payroll and other direct operating expenses and obtain goods and services needed to
carry on their businesses during this sensitive period in a manner that will avoid irreparable harm
to the Debtors' estates, creditors, customers and employees. At this time, the Debtors' ability to
finance their operations and the availability to them of sufficient working capital and liquidity
through the incurrence of new indebtedness for borrowed money and other financial
accommodations are vital to the confidence of the Debtors' vendors and suppliers of other goods
and services, to their customers and to the preservation and maintenance of the going concern
value of the Debtors' estates. The Debtors are unable to obtain the required funds in the form of
unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as
an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, unsecured
debt having the priority afforded by section 364(c)(1) or debt secured as described in section
364(c)(2) or (3) except as set forth herein.

7

K.     The Prepetition Lender asserts, and the Debtors believe, that substantially all of the Debtors' assets are subject to the Prepetition Lender's Liens. The Prepetition Lender has objected to any further use of the Prepetition Collateral by the Debtors, except under the terms of this Final Order; including, without limitation, the payment to the Post-Petition Lender by the Debtors of a nonrefundable fee in the amount of $250,000, payable on the Petition Date (the "Post-Petition Financing Fee"), which fee shall be immediately fully-earned and payable.

L.     The Prepetition Lender has indicated a willingness to consent and agree to the Debtors' entering into the financing arrangements contemplated by this Final Order, and the Post-Petition Lender is willing to provide the additional financing contemplated herein, all subject to the conditions set forth herein and in the Prepetition Financing Documents (as amended hereby and subject to the terms hereof) and the provisions of this Final Order assuring that the Post-Petition Liens and the various claims, superpriority claims and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal or modification of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Final Order. The Post-Petition Lender and the Prepetition Lender have acted in good faith in consenting to and in agreeing to provide the post-petition financing contemplated by this Final Order. The reliance of the Post-Petition Lender and the Prepetition Lender on the assurances referred to above is in good faith.

M.     Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtors are required to provide adequate protection to the Prepetition Lender against any diminution in value of the Prepetition Collateral from and after the Petition Date. The treatment requested by the Debtors for the Prepetition Lender and provided by this Final Order will minimize disputes and

8

litigation over priming, use of cash collateral, and the need to segregate the Prepetition Collateral and the proceeds thereof from the "Post-Petition Collateral" (as hereinafter defined) and the proceeds thereof.

N.    Notice of the hearing on the Motion and this Final Order has been provided (by hand, telecopy, overnight mail or courier) to counsel for the Prepetition Lender, the Committee and the United States Trustee.  Such notice constitutes sufficient notice under Bankruptcy Rule 4001 and no other notice need be given.

O.    Good cause has been shown for the entry of this Final Order.  Among other things, entry of this Final Order will minimize disruption of the Debtors' businesses and operations and permit them to meet payroll and other operating expenses, obtain needed supplies and retain customer and supplier confidence by demonstrating an ability to maintain normal operations.  The financing arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtors' estates.  Consummation of such financing therefore is in the best interests of the Debtors' estates.

P.    The financing and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length among the Debtors, the Post-Petition Lender, and the Prepetition Lender.  The terms of such financing and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.  As such, the Debtors, the Prepetition Lender and the Post-Petition Lender are entitled to the protections provided by section 364(e) of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

9

1.      The Debtors be, and hereby are, authorized to borrow money pursuant to the terms of this Final Order and the provisions of the Prepetition Financing Documents (as the Prepetition Financing Documents may be amended to memorialize the proposed additional financing and as otherwise set forth herein) in an amount not greater than the Loan Limit (as defined below) minus the Prepetition Indebtedness (the "Post-Petition Loans") and perform their obligations hereunder and thereunder, solely in accordance with, and subject to, the terms of this Final Order, in compliance with and for the purposes of funding those expenses set forth in the budget attached hereto as Exhibit A (as may be supplemented from time to time, the "Budget"); provided, however, no advances will be made by the Post-Petition Lender unless and until each Guarantor duly executes this Order acknowledging, consenting and agreeing to the terms of this Order and agreeing to guaranty the obligations and liabilities owing the Post-Petition Lender by the Debtors. The Debtors shall be authorized to borrow funds pursuant to this Final Order: (a) in the amounts set forth in the Budget (after taking the "Variance" (hereinafter defined) into account), and (b) until the aggregate of the Prepetition Indebtedness and the Post-Petition Loans reaches $25,400,000 (the "Loan Limit"). The determination of compliance with the Budget shall be made on a week-ending basis for each week until the occurrence of a Termination Event (hereinafter defined); provided, however, that the Debtors are deemed to be in compliance with the Budget as of the week ending November 2, 2007. Notwithstanding the foregoing, the Debtors shall be deemed to be in compliance with the Budget so long as its total cash disbursements, on a rolling two-week basis, are less than 110% of the amount provided for in the Budget for each respective two-week period and so long as its collections and sales, on a rolling two-week basis, are more than ninety percent (90%) of the amounts provided for in the Budget for each respective two-week period (collectively, the "Variance"). Disbursements projected in

10

the Budget for any particular week, to the extent not paid in such projected week, may be disbursed in any subsequent weeks, subject to and in compliance with the Variance. Following three (3) business days' notice to the Committee (during which the Committee may file objections, if any, with the Court), if no such objection is filed with the Court, the Debtors are authorized to enter into such non-material modifications and amendments to the Budget without further Court order as may be agreed upon in writing by the Debtors and the Post-Petition Lender. Notwithstanding the provisions of the Prepetition Financing Documents relating to accrual and payment of interest, the Post-Petition Loans shall accrue interest on the outstanding principal amount thereof at a rate equal to the "Prime Rate" announced from time-to-time by the Post-Petition Lender, plus two percent (2%). Notwithstanding any other provision of this Final Order, the Post-Petition Lender shall not have any obligation or commitment to make Post-Petition Loans pursuant to this Final Order until the conditions precedent provided for herein have been satisfied.

2.     From and after the date hereof (the "Effective Date") until: (a) the indefeasible payment in full in cash of the Post-Petition Loans and the Prepetition Indebtedness; and (b) the termination of any commitments or obligations under this Final Order, the Debtors are hereby authorized and directed to remit, and shall remit to the Post-Petition Lender immediately upon the Debtors' receipt thereof, or otherwise in accordance with the Debtors' current practices, all "cash collateral" (as defined in Bankruptcy Code section 363(a)) in their possession or control arising from, or constituting proceeds of, the Prepetition Collateral or the Post-Petition Collateral, including all funds contained in the Lock Box Accounts on the Petition Date (collectively, the "Cash Collateral"). Cash Collateral remitted (or deemed remitted) to the Post-Petition Lender shall be applied as and to the extent specified in paragraph 3 hereof, subject to

11

Case 07-18769    Doc 200    Filed 11/15/07    Entered 11/16/07 15:19:48    Desc Main
                                Document        Page 12 of 36

potential disgorgement as contemplated by the Investigation Periods provisions of paragraph 16 hereof. For purposes of this Final Order, "proceeds" of any collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such collateral as well as: (x) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtors from time to time with respect to such collateral; (y) any and all payments (in any form whatsoever) made or due and payable to the Debtors in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such collateral by any governmental body, authority, bureau or agency (or any person under color of governmental authority); and (z) other payments, dividends, interest or other distributions on or in respect of any of such collateral.

3.    Proceeds or payments of Prepetition Collateral and Post-Petition Collateral, together with proceeds of all Cash Collateral, remitted or deemed remitted to the Post-Petition Lender in accordance with paragraph 2 hereof shall be applied by the Post-Petition Lender as follows (subject to potential disgorgement as contemplated by the Investigation Periods provisions of paragraph 16 hereof):

(i)    first, to any other outstanding amounts of Post-Petition Loans, including costs, expenses and principal;

(ii)    next, to accrued, unpaid interest on the Post-Petition Loans;

(iii)    next, to payment of Prepetition Indebtedness consisting of accrued interest, costs and expenses; and

(iv)    last, to any portion of the Prepetition Indebtedness consisting of principal.

To the extent the Court enters a final order finding that the Prepetition Lender is undersecured, all interest and fee payments with respect to Pre-Petition Indebtedness shall be applied to the

12

partial satisfaction of the principal amount of such Pre-Petition Indebtedness to the extent the Prepetition Lender is secured.

4.    Any and all payments or proceeds remitted, or deemed to be remitted, to the Post-Petition Lender pursuant to the provisions of paragraph 2 of this Final Order (or any similar provisions of the Prepetition Financing Documents) shall be received, or deemed received, by the Post-Petition Lender free and clear of any claim, charge, assessment or other liability, all of which are waived by the Debtors; provided, however, that, notwithstanding the blanket waiver of section 506(c) claims and charges under the terms of this Final Order, the Committee reserves the right to seek to surcharge the Post-Petition Collateral under section 506(c) of the Bankruptcy Code for the proposed Transaction Fee (as defined and described in paragraph 20(b) of the *Application of Official Committee of Creditors Holding Unsecured Claims to Employ and Retain Macquarie Securities (USA) Inc. as Its Financial Advisor and Investment Banker [Docket No. 104]*) portion of Macquarie Securities (USA) Inc.'s compensation.  The Post-Petition Lender agrees that the Committee shall have standing to seek on behalf of the Debtors' estates the limited surcharge as set forth in this paragraph.

5.    As security for all loans, advances and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by the Debtors to the Post-Petition Lender (all such loans, advances, indebtedness or obligations are the "Post-Petition Loans"), the Post-Petition Lender is hereby granted valid, binding, enforceable and perfected liens (the "Post-Petition Liens") in all currently-owned or hereafter-acquired property and assets of the Debtors of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising, and all proceeds, products, rents and profits thereof, including, without limitation, all cash, goods, accounts, inventory, cash-in-

13

advance deposits, general intangibles, deposit accounts, real estate, machinery, equipment,

vehicles, trademarks, trade names, licenses, claims and causes of action, rights to payment

including tax refund claims, insurance proceeds, and tort claims, and the proceeds, products,

rents and profits of all of the foregoing (all of the foregoing, specifically including any claims or

litigation rights pursuant to sections 544, 545, 547, 548 and 550 of the Bankruptcy Code, the

"Post-Petition Collateral," in each case subject only to the Carve-Out and Existing Liens (each as

hereinafter defined); provided, however, that the Post-Petition Collateral shall not include any

claims or litigation rights pursuant to sections 544, 545, 547, 548 and 550 of the Bankruptcy

Code in the event that the Lender issues a Termination Notice prior to a closing of the sale of

substantially all of the Debtors' assets.

6.    As adequate protection, the Prepetition Lender is hereby granted valid, binding,

enforceable and perfected liens (the "Adequate Protection Liens") in all Post-Petition Collateral

to secure (the "Adequate Protection Obligations") any claims the Prepetition Lender has under

section 507(c) of the Bankruptcy Code. The Adequate Protection Liens are subject only to: (i)

the Post-Petition Liens; (ii) the Existing Liens (as hereinafter defined); and (iii) the Carve-Out

(as hereinafter defined).

7.    Except as expressly set forth in this Final Order: (y) the liens and security

interests granted in this Final Order to secure the Post-Petition Loans shall not be subject to any

lien which is avoided and preserved for the benefit of the Debtors' estates under section 551 of

the Bankruptcy Code; and (z) the liens and security interests granted in this Final Order shall not

be subordinated to or made *pari passu* with any other lien under section 364(d) of the

Bankruptcy Code or otherwise (except insofar as such liens on certain pieces of the Debtors'

equipment are subordinated to valid, binding, enforceable, perfected and unavoidable liens in

14

existence on the Petition Date (the "Existing Liens")).  As used in this Final Order, "Carve-Out"

means: (a) the unpaid fees of the clerk of the Bankruptcy Court or District Court, as applicable,

and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b); (b) the fees (including

the success fee pursuant to the terms of that certain letter dated October 11, 2007 from the

Prepetition Lender and Post-Petition Lender to Winston & Strawn LLP, counsel for the Debtors

("Winston"), and Keystone Consulting Group LLC, financial advisor to the Debtors ("Keystone"

and together with Winston, the "Debtors' Professionals"), and countersigned by the Debtors (the

"Fee Letter")), costs and expenses incurred by the Debtors' Professionals from the Petition Date

through the earlier of: (X) twenty-five (25) calendar days following the closing of the sale of

substantially all of the Debtors' assets; (Y) dismissal of the Chapter 11 Cases; or (Z) conversion

of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, pursuant to the

procedures and limitations set forth herein (such fees, costs and expenses of the Debtors'

Professionals, the "DP Fees"); and (c) the aggregate allowed unpaid fees and expenses payable

under sections 330 and 331 of the Bankruptcy Code to professional persons retained pursuant to

Court order by the Committee not to exceed $250,000 in the aggregate ($200,000 expressly

allocated from the $1,650,000 available to the Debtors' estates pursuant to Section 1.5(d) of the

Asset Purchase Agreement by and among the Borrowers, as sellers, and Jay's Acquisition, Inc.,

as purchaser (as amended with the Post-Petition Lender's consent, the "Jay's Acquisition APA"),

or any higher and better bid (which number hereinafter shall be reflected as $1,450,000), and

$50,000 as set forth in the attached Budget); provided that the Carve-Out shall not include the

fees and expenses, if any, of any such professional persons incurred, directly or indirectly, in

respect of, arising from or relating to:  (i) the initiation or prosecution of any action contesting

the validity, priority or extent of the claims or liens asserted by the Prepetition Lender; (ii) any

15

action for preferences, fraudulent conveyances, and other avoidance power claims against the

Prepetition Lender; or (iii) any other cause of action of the Debtors or their estates against the

Prepetition Lender or the Post-Petition Lender. If, on or prior to December 31, 2007, the

proceeds received by the Prepetition Lender and/or Post-Petition Lender from the sale, transfer

or other disposition of the Prepetition Collateral, the Post-Petition Collateral or the Prepetition

Lender's or the Post-Petition Lender's claims (whether the Prepetition Lender and/or Post-

Petition Lender receive such proceeds during the Chapter 11 Cases, before or after the

confirmation of any plan in the Chapter 11 Cases, or before or after the conversion or dismissal

of the Chapter 11 Cases and whether such proceeds are received from the Debtors, the Debtors'

estates, from any chapter 11 or chapter 7 trustee, from any buyer, lessee or assignee of the

Prepetition Collateral and/or Post-Petition Collateral or the Prepetition Lender's or Post-Petition

Lender's claims, or from any other person or entity, or any successor or assign thereof)

(collectively, the "Claim Proceeds") are not sufficient to pay in full the Post-Petition Loans and

the Prepetition Indebtedness (exclusive of any allowed claim the Prepetition Lender may have

against the Debtors on account of the Fee Letter), then, on December 31, 2007, the Prepetition

Lender and/or the Post-Petition Lender shall pay the DP Fees pursuant to the Fee Letter. If, on

or prior to December 31, 2007, the Claim Proceeds are (or were) sufficient to pay in full the

Post-Petition Loans and the Prepetition Indebtedness (exclusive of any allowed claim the

Prepetition Lender may have against the Debtors on account of the Fee Letter), then, on

December 31, 2007, the Prepetition Lender and/or the Post-Petition Lender shall pay the DP Fees

pursuant to the Fee Letter, unless the DP Fees have finally and indefeasibly been paid from

Unencumbered Funds on or prior to December 31, 2007 (as used in this Final Order,

"Unencumbered Funds" excludes the $1,450,000 available to the Debtors' estates pursuant to

Section 1.5(d) the Jay's Acquisition APA or in connection with any higher and better bid);

provided, however, that for purposes of this sentence, each of the Debtors' Professionals, from

and after January 1, 2008, shall prosecute its respective claims against the Debtors and their

estates for payment of the DP Fees from Unencumbered Funds and shall turn over to the

Prepetition Lender or the Post-Petition Lender any payments received on account of the DP Fees

from Unencumbered Funds; provided further, however, that for purposes of this sentence, the

payment by the Prepetition Lender or the Post-Petition Lender of DP Fees under the Fee Letter

shall not be a defense to the allowance or payment by the Debtors or their estates of DP Fees

from Unencumbered Funds. With respect to the fees and expenses set forth in element (a) of the

definition of Carve-Out set forth in the second sentence of this paragraph 7, the Carve-Out shall

only be available to the extent that Unencumbered Funds are not otherwise available to pay such

fees and expenses. With respect to the fees and expenses set forth in element (c) of the definition

of Carve-Out set forth in the second sentence of this paragraph 7, $200,000 of such Carve-Out

amount is expressly allocated from the $1,650,000 available to the Debtors' estates pursuant to

Section 1.5(d) of the Jay's Acquisition APA or in connection with any higher and better bid and

$50,000 is included as a line-item in the attached Budget. The Carve-Out shall only be available

for the benefit of the persons or entities expressly identified in (a), (b) or (c), respectively, above.

To the extent that the Carve-Out is not paid to and indefeasibly retained by the persons or entities

expressly identified in (a) or (b) above, such funds shall revert to the Prepetition Lender or the

Post-Petition Lender in accordance with the terms and conditions hereof. So long as no Default

or Event of Default shall have occurred and be continuing hereunder, subject to this paragraph,

the Debtors shall be permitted to pay compensation and reimbursement of expenses

(contemplated by the Carve-Out) allowed and payable under sections 330 and 331 of the

Bankruptcy Code, as the same may be due and payable; provided, however, that nothing contained in this sentence shall be deemed to impair the payment of unpaid amounts due in accordance with this paragraph. Notwithstanding any provision of this Final Order to the contrary, all rights and remedies of the Prepetition Lender and the Post-Petition Lender (as well as the priority of all liens and claims of the Prepetition Lender and the Post-Petition Lender) under applicable law and/or hereunder shall be subject to the Carve-Out.

8.      In addition, subject to the last proviso of paragraph 5 hereof, (a) the Post-Petition Loans shall have priority in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses ("Superpriority"), subject only to the Carve-Out and the Existing Liens, and (b) the Adequate Protection Obligations shall have Superpriority, subject only to the Carve-Out, the Existing Liens and the aforementioned priorities of the Post-Petition Loans. Except for the Carve-Out, no costs or administrative expenses that have been or may be incurred in the Debtors' Chapter 11 Cases, in any conversion of the Debtors' Chapter 11 Cases to a proceeding pursuant to chapter 7 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other Superpriority claims, are or will be prior to or on a parity with the claims of the Prepetition Lender or Post-Petition Lender against the Debtors arising, as applicable, out of the Post-Petition Loans or Adequate Protection Obligations or any provision of this Final Order or with the liens and security interests granted herein on, in and to the Post-Petition Collateral.

9.      The Post-Petition Loans shall become payable three (3) days following delivery of a Termination Notice (as defined below). Upon expiration of the three-day period following delivery of a Termination Notice (as defined below), the Debtors shall have no authority to use

18

Prepetition Collateral (including Cash Collateral) of the Prepetition Lender or Post-Petition Collateral of the Post-Petition Lender.

       10.     From and after the Effective Date, the proceeds of the Post-Petition Loans, the Prepetition Collateral, and the Post-Petition Collateral shall not, directly or indirectly, be used to pay expenses of the Debtors or otherwise disbursed except for: (a) those expenses, payments, and/or disbursements that are expressly set forth in the Budget or otherwise permitted under this Final Order; (b) compensation and reimbursement of expenses allowed by this Court to attorneys, accountants, investment bankers, financial advisors or other professional persons retained by the Debtors and the Committee as provided for in this Final Order; and (c) amounts due to the Prepetition Lender and the Post-Petition Lender, and their accountants, attorneys or other professionals hereunder or under the Prepetition Loan Agreements; provided that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clauses (a) or (b) and shall not affect the right of the Prepetition Lender or the Post-Petition Lender to object to the allowance and payment of such amounts. No consent by the Post-Petition Lender or the Prepetition Lender to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Prepetition Lender or the Post-Petition Lender or their respective interests in the Prepetition Collateral or the Post-Petition Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, shall be implied from any action, inaction or acquiescence by the Prepetition Lender or the Post-Petition Lender or otherwise. Except as set forth in the first sentence of this paragraph 10, neither the Prepetition Lender nor the Post-Petition Lender has consented or agreed to the use of the proceeds of the Post-Petition Loans, Prepetition Collateral or the Post-Petition Collateral.

11.    The automatic stay extant under Bankruptcy Code section 362(a) shall be, and it hereby is, modified to the extent necessary to permit the Prepetition Lender and the Post-Petition Lender to retrieve, collect and apply payments and proceeds in respect of the Prepetition Collateral and the Post-Petition Collateral in accordance with the terms and provisions of this Final Order.

12.    Upon delivery by the Post-Petition Lender of not less than three (3) business days' written notice, served by overnight delivery service or facsimile to the Debtors, with copies to the Committee and the Office of the United States Trustee (the "Termination Notice"), of the earliest to occur of any of the following events (any such event shall be referred to as a "Termination Event" and the date of any such event shall be referred to as the "Termination Date"), and without further act or action or any further notice, hearing, or order of this Court, the Debtors shall no longer, pursuant to this Final Order or otherwise, be authorized to borrow funds hereunder or to use Cash Collateral or any proceeds of the Post-Petition Loans already received (and any obligation of the Post-Petition Lender to make loans or advances hereunder shall be terminated) :

(a)    Financial Statements.  Any Debtor's delivery to Prepetition and/or Post-Petition Lender of financial statements (other than budgets and projections) not prepared in accordance with GAAP consistently applied and/or not accurately reflecting the financial condition of any Debtor as at the dates thereof and the results of its operations for the periods then ended;

(b)    Material Adverse Change.  Since the Petition Date, the occurrence of a Material Adverse Change as such term is defined in the Prepetition Loan Documents;

20

(c)    Loans by Debtors.  Any Debtor makes any loan or advance to any affiliate or other person except for advances authorized hereunder to employees, officers and directors of any Debtor for travel and other expenses arising in the ordinary course of any Debtor's business;

(d)    Accounts and Inventory.  Any Debtor requests Prepetition and/or Post-Petition Lender to classify an account or inventory as an Eligible Account (as defined in the Prepetition Loan Documents) or as Eligible Inventory (as defined in the Prepetition Loan Documents), respectively, which account and/or inventory does not conform in all respects to the requirements of such classification as set forth in the respective definitions of "Eligible Account" and "Eligible Inventory" set forth in the Prepetition Loan Documents;

(e)    Affiliate Transactions.  Any Debtor conducts, permits or suffers to be conducted transactions with any affiliate other than transactions with affiliates for the purchase or sale of inventory or services in the ordinary course of business pursuant to terms that are no less favorable to any Debtor than the terms upon which such transactions would have been made had they been made to or with a person that is not an affiliate;

(f)    Insurance.  Any Debtor's failure to: (i) keep the Prepetition Collateral or Post-Petition Collateral properly housed and insured for the full value thereof against loss or damage by fire, theft, explosion, sprinklers, collision (in the case of motor vehicles) and such other risks as are customarily insured against by persons engaged in businesses similar to that of the Debtors, with such companies, in such amounts, with such deductibles, and under policies in such form, as shall be reasonably satisfactory to the

21

Prepetition Lender and Post-Petition Lender; and/or (ii) maintain, at the Debtors'
expense, such public liability and third-party property damage insurance as is customary
for persons engaged in businesses similar to that of the Debtors, with such companies, in
such amounts, with such deductibles, and under policies in such form, as shall be
reasonably satisfactory to the Prepetition Lender and Post-Petition Lender;

(g)     <u>Prepetition Collateral and Post-Petition Collateral</u>. Any Debtor's failure
to: (i) keep and maintain the Prepetition Collateral and Post-Petition Collateral in good
operating condition, repair and order (ordinary wear and tear and casualty losses
excepted); (ii) make all commercially reasonable replacements of, and repairs to, the
Debtors' equipment so that the operating efficiency and the value thereof shall at all
times be preserved and maintained; and/or (iii) prevent any equipment from becoming (x)
a fixture to real estate unless such equipment is Appraised Equipment (as defined in the
Prepetition Loan Documents) or (y) an accession to any other personal property unless
such personal property is subject to a first-priority lien in favor of the Prepetition Lender
and/or Post-Petition Lender;

(h)     <u>Checking Accounts and Cash Management Services</u>. Any Debtor's failure
to maintain its general checking account/controlled disbursement account and all other
deposit accounts and disbursement accounts with LaSalle Bank;

(i)     <u>Loan Limit</u>. The total amount of the Prepetition Indebtedness plus the
Post-Petition Loans exceeding the Loan Limit;

(j)     <u>Compliance with Final Order</u>. The Debtors' failure to comply with the
terms and conditions of this Final  Order (including, without limitation, the Debtors'

22

failure to comply with the Budget, subject to the Variance, as set forth in paragraph 1 above);

(k)    Sale Process.  The Debtor's failure to complete the sale of its business as a going concern (the "Sale") in accordance with the following schedule, approved by the Court on October 23, 2007, in the *Order (a) Scheduling the Date, Time and Place for a Hearing on the Proposed Sale Motion; (b) Approving the Form and Manner of the Notice Thereof; and (c) Approving the (i) Bidding Procedures and (ii) Break-Up Fees* (the "Bidding Procedures Order") [*Docket No. 93*]: (i) the Debtor shall receive Qualified Bids (as defined in the Bidding Procedures Order) from Qualified Bidders (as defined in the Bidding Procedures Order) on or before November 28, 2007, at 11:00 a.m. (prevailing Central time) (copies of which the Debtor shall provide to the Post-Petition Lender); (ii) the Debtor shall hold an auction of its assets in accordance with the terms and conditions of the Bidding Procedures Order on November 30, 2007, at 11:00 a.m. (prevailing Central time), following which auction the Debtor shall, with approval of the Post-Petition Lender, determine the highest and best offer for the assets; and (iii) the Debtor shall seek entry of an order, with the approval of the Post-Petition Lender, among other things, authorizing and approving the Sale to the Proposed Purchaser (as defined in the Bidding Procedures Order) or the Successful Bidder (as defined in the Bidding Procedures Order) on December 4, 2007, at 10:30 a.m.; or

(l)    Maturity Date.  The occurrence of the Maturity Date (as hereinafter defined).

13.    All obligations and commitments of the Prepetition Lender and the Post-Petition Lender hereunder shall terminate, automatically and without the need for issuance of a

23

Termination Notice, at the earliest of the following (the "Maturity Date"): (a) December 10,

2007;  (b) the consummation of a sale pursuant to section 363 of the Bankruptcy Code of

substantially all of the Debtors' assets; (c) the effective date of any plan of reorganization;

(d) conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; (e)

appointment of a trustee or examiner in the Chapter 11 Cases; or (f) dismissal of the Chapter 11

Cases.

14.     Subject to the applicable provisions of paragraph 17, five (5) business days after

delivery of a Termination Notice, the Prepetition Lender or the Post-Petition Lender shall have

the right, without further order of court or notice to the Debtors, to exercise the rights granted

them hereunder as to all or such part of the Prepetition Collateral or Post-Petition Collateral, as

the Prepetition Lender or the Post-Petition Lender, in their sole discretion, shall elect, including

the right to take possession of and sell the Prepetition Collateral or Post-Petition Collateral in

accordance with the terms of the Uniform Commercial Code to satisfy the Prepetition

Indebtedness and the Post-Petition Loans.  For such purpose, the automatic stay of section 362 of

the Bankruptcy Code is hereby modified and vacated as against the Prepetition Lender and the

Post-Petition Lender.

15.     Notwithstanding the occurrence of the Termination Date or anything herein to the

contrary, all of the rights, remedies, benefits and protections provided to the Prepetition Lender

and Post-Petition Lender under this Final Order shall survive the Termination Date.  Upon the

Termination Date, the principal of and accrued interest and fees and all other amounts owed to

the Prepetition Lender and the Post-Petition Lender hereunder or under the Prepetition Financing

Documents shall be immediately due and payable and the Prepetition Lender and the Post-

Petition Lender shall, subject to the five (5) business day notice period set forth in paragraph 14,

have all other rights and remedies provided in the Prepetition Loan Agreements and this Final Order. Notwithstanding anything herein, no amounts under the Carve-Out, or the proceeds of the Post-Petition Loans, or the proceeds of the Prepetition Collateral or the Post-Petition Collateral shall be used for the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Prepetition Indebtedness or any liens or security interests with respect thereto, or any other rights or interest of the Prepetition Lender or the Post-Petition Lender or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code against the Prepetition Lender or Post-Petition Lender; (b) preventing, hindering, or delaying the Post-Petition Lender's enforcement or realization upon any of the Post-Petition Collateral; (c) using Cash Collateral or selling any Collateral except as specifically permitted in this Final Order (including the Carve-Out) or by order of the Bankruptcy Court; (d) incurring indebtedness except as permitted by this Final Order; or (e) modifying the Post-Petition Lender's rights hereunder.

16.     The findings and stipulations contained in paragraphs B, C, D, E, F, G, H, I and J above, and the repayment of the Prepetition Indebtedness contemplated by paragraphs 2 and 3 above, shall be binding upon all parties in interest, including without limitation, the Debtors, the Committee, and any other statutory committees appointed in the Chapter 11 Cases, unless a party in interest with standing to do so (including the Committee) has filed an adversary proceeding (which adversary proceeding shall be subject to the limitation set forth in the last sentence of decretal paragraph 15): (a) challenging the perfection or priority of the Prepetition Indebtedness or the Prepetition Lender's Liens on the Prepetition Collateral in respect thereof no later than December 17, 2007, the date that is sixty (60) days after the date of the initial appointment of the

25

Committee (the "First Investigation Period"); or (b) otherwise asserting any claims or causes of action against the Prepetition Lender on behalf of the Debtors' estates (including, but not limited to, claims relating to the avoidance of any liens held by the Prepetition Lender as fraudulent transfers or preferential transfers), no later than February 14, 2008, the date that is 120 days after the date of the initial appointment of the Committee (the "Second Investigation Period" and, together with the First Investigation Period, the "Investigation Periods") with respect to any challenge relating to the Prepetition Indebtedness or the Prepetition Lender's Liens on the Prepetition Collateral, or otherwise relating to any claims or causes of action against the Prepetition Lender; and (b) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding and such ruling becomes a final order. If no such adversary proceeding is commenced during the First Investigation Period, the Prepetition Lender's Liens on the Prepetition Collateral shall be deemed first-priority liens encumbering the Prepetition Collateral. If no such adversary proceeding is commenced during the Second Investigation Period, (a) the repayment of the Prepetition Indebtedness or the Post-Petition obligations, and the satisfaction of the Prepetition Lender's Liens (excluding the Adequate Protection Liens) thereon, shall be deemed final and indefeasible, not subject to defense, subordination or otherwise unavoidable, (b) the Prepetition Indebtedness shall constitute allowed claims, not subject to defense, subordination or otherwise unavoidable, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases and (c) the Prepetition Lender, the Prepetition Indebtedness, the Prepetition Loan Agreements and the Prepetition Lender's Liens on the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto. The filing of any adversary proceeding against the Prepetition Lender or the Post-Petition Lender, by any

26

party in interest, shall constitute a Termination Event. Subject only to the foregoing provisions of this paragraph 16, the Prepetition Lender shall be deemed released of all claims, rights, causes of action or defenses by, and all liabilities owing to, the Debtors, the Committee, all of the Debtors' creditors, and any subsequently appointed trustee arising out of or based on any facts or circumstances occurring prior to the date hereof. The Committee is granted standing to pursue claims against the Prepetition Lender or the Post-Petition Lender without further order of the Court.

17.     If it shall be necessary for the Prepetition Lender or the Post-Petition Lender, at any time after the occurrence of a Termination Event, to exercise any of their respective rights and remedies hereunder or under applicable law in order to effect repayment of the Post-Petition Loans or the Adequate Protection Obligations, or to receive any amounts or remittances due hereunder, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or the Post-Petition Collateral, the Prepetition Lender and the Post-Petition Lender shall, unless an order has been entered by the Court to the contrary within the five-day notice period provided below, have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Prepetition Collateral and the Post-Petition Collateral as the Prepetition Lender or the Post-Petition Lender shall, in their sole discretion, elect, subject to the Prepetition Lender or the Post-Petition Lender, as applicable, having provided the Debtors, the Committee and any other official committee that may be appointed in the Chapter 11 Cases with at least five (5) days' advance notice. The Prepetition Lender and the Post-Petition Lender shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Post-Petition Collateral in accordance with the provisions of this Final Order, and in no event shall the Prepetition Lender or the Post-Petition Lender be subject to

27

the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Post-Petition Collateral or otherwise.

18.    Except as provided herein, the Debtors shall be enjoined and prohibited from at any time during the Chapter 11 Cases granting liens on and security interests in the Prepetition Collateral, the Post-Petition Collateral or any portion thereof to any other parties pursuant to section 364 of the Bankruptcy Code or otherwise, which liens and security interests, as the case may be, are senior, or on a parity with, or junior to the liens and security interests of the Prepetition Lender or the Post-Petition Lender therein (excluding any liens resulting from Court-approved reclamation claims).   Except in accordance with the terms of this Final Order, the Debtors shall be enjoined and prohibited from at any time: (a) using the Prepetition Lender's Cash Collateral and (b) using the Post-Petition Collateral.

19.    The Debtors shall execute and deliver to the Prepetition Lender and the Post-Petition Lender all such agreements, financing statements, instruments and other documents as the Prepetition Lender and the Post-Petition Lender may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted pursuant hereto.

20.    The Debtors shall permit representatives, agents and/or employees of the Prepetition Lender and the Post-Petition Lender upon reasonable notice to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

21.    As part of the Debtors' obligations hereunder, and as consideration for the agreement of the Post-Petition Lender to provide the Post-Petition Loans to the Debtors, the

28

Debtors shall promptly reimburse the Prepetition Lender or the Post-Petition Lender for its reasonable costs, fees (including reasonable attorneys' fees), charges and expenses to the extent provided for in the Prepetition Loan Agreements or this Final Order, as the case may be; provided, however, that all fees and expenses of professionals to the Post-Petition Lender shall be paid immediately following ten (10) days' written notice of the same to the Debtors, the Committee, and the Office of the United States Trustee, unless one of those parties objects in writing to such payment within ten (10) days of the providing of such notice. In the event of a timely objection, any uncontested portion of such Post-Petition Lender professionals' fees and expenses shall be paid as if no objection had been made. Neither the Debtors nor the Post-Petition Lender shall be obligated to file any further application with the Court for approval or payment of such fees or expenses. Upon payment of such fees and expenses, such fees and expenses shall be deemed fully earned, indefeasibly paid, and non-refundable. All such costs, fees, charges and expenses shall be part of the Post-Petition Loans and shall have the same rights, status and priority as the Post-Petition Loans. The Post-Petition Liens and all other liens and security interests granted herein shall, pursuant to this Final Order, be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if the Prepetition Lender or Post-Petition Lender shall, in their sole discretion, choose to file such mortgages, financing statements, notices of liens and security interests and other similar documents, all such mortgages, financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby vacated to effect such filings.

29

22.    In making decisions to advance moneys or extend financial accommodations of any nature under this Final Order or the Prepetition Financing Documents or in administering the Debtors' use of Cash Collateral or any advances, loans, or financial accommodations of any sort under this Final Order or (from and after the Petition Date) the Prepetition Financing Documents, the Post-Petition Lender shall have no liability to any third party: (a) as an "employer" of any of the Debtors' employees; (b) as being in control of the operations of the Debtors; or (c) as acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors.

23.    The provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Lender, the Post-Petition Lender, the Debtors and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).

24.    Based on the findings set forth in paragraphs O and P of this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the Prepetition Lender or the Post-Petition Lender hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Lender or the Post-Petition Lender, as the case

30

may be, shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

25.   The Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages and financing statements) and to pay fees and expenses that may be required or necessary for the Debtors' performance hereunder, including, without limitation: (a) the execution of any post-petition financing documents, and (b) the payment of the fees and other expenses described herein or in such post-petition financing documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees and facility fees and reasonable attorneys', financial advisers' and accountants' fees and disbursements.

26.   Notwithstanding anything to the contrary herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of the Prepetition Lender or the Post-Petition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Prepetition Lender and the Post-Petition Lender to, upon the occurrence of a Termination Event, (i) request additional adequate protection of their interests in the Prepetition Collateral or the Post-Petition Collateral or relief from or, to the extent not otherwise provided for hereunder, modification of the automatic stay extant under section 362 of the Bankruptcy Code, (ii) request conversion of the Chapter 11 Cases to chapter 7, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Lender or the Post-Petition Lender.

31

27.      Notwithstanding any other provision of this Final Order, Allowed PACA Claims

(as such term is defined in the *Debtors' Motion for Entry of an Order Establishing Procedures*

*for the Resolution and Payment of PACA and PASA Claims* (the "PACA Motion") [*Docket No.*

*20*]) shall be paid in accordance with the *Order Establishing Procedures for the Resolution and*

*Payment of PACA and PASA Claims* [*Docket No. 71*], entered by this Court on October 18, 2007,

first, from the amount budgeted for PACA/PASA Claimants (as defined in the PACA Motion) in

the Budget and, second, if such budgeted funds are completely exhausted, from the proceeds of

the sale of substantially all of the Debtors' assets, exclusive of the $1,450,000 available to the

Debtors' estates pursuant to the Jay's Acquisition APA or in connection with any higher and

better bid.

28.      This Final Order shall constitute findings of fact and conclusions of law and shall

take effect immediately upon execution hereof. There is no just reason to delay enforcement or

appeal of this Final Order.

Dated:      November 15, 2007.


ENTERED:


_____
UNITED STATES BANKRUPTCY JUDGE

32

**APPROVED AS TO FORM AND SUBSTANCE:**

JAYS FOODS, INC.
SELECT SNACKS, INC.

By:  _M. Kh_____

  One of Their Attorneys

Mark K. Thomas (ARDC # 06181453)
Brian I. Swett (ARDC # 06283211)
Jeremy T. Stillings (ARDC # 06279868)
Myja K. Kjaer (ARDC # 06289949)
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
mkthomas@winston.com
bswett@winston.com


LASALLE BUSINESS CREDIT, LLC

By:  _Peter J. Young_____

  One of Its Attorneys

John Sieger (ARDC # 06240033)
Peter Young (ARDC # 06278765)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661
(312) 902-5294
john.sieger@kattenlaw.com
peter.young@kattenlaw.com

33

Each of the undersigned hereby acknowledges, consents and agrees to the terms of this *Final Order* and hereby guaranties the obligations and liabilities owing by the captioned Debtors to the Post-Petition Lender relating to the Post-Petition Loans.

Select Snacks, Inc.
By: _____
Its: _____

Select Snacks Holding Company, Inc.
By: _____
Its: _____

Jays Foods, Inc.
By: _____
Its: _____

Jays Holding Company, Inc.
By: _____
Its: _____

34

## EXHIBIT A

### Budget

attached hereto

Attorney Client Work Product
Privileged and Confidential
DRAFT - Subject to Change

Select Snacks / Jays Foods
Chapter 11 DIP Sizing
($ in Thousands)

| Select Snacks / Jays Foods | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Total |
| Week # | 10/21/2007 | 10/28/2007 | 11/4/2007 | 11/11/2007 | 11/18/2007 | 11/25/2007 | 12/2/2007 | 12/9/2007 | |
|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | |
| Lock Box Receipts | $ 1,626 | $ 1,626 | $ 1,626 | $ 1,626 | $ 1,626 | $ 1,714 | $ 1,841 | $ 1,865 | $ 13,550 |
| Cash Sales | 276 | 291 | 300 | 309 | 309 | 300 | 300 | 300 | 2,385 |
| Collection of Ineligible A/R | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 200 |
| Total Receipts | $ 1,927 | $ 1,942 | $ 1,951 | $ 1,960 | $ 1,960 | $ 2,039 | $ 2,166 | $ 2,190 | $ 16,135 |
| **Disbursements** | | | | | | | | | |
| Material | | | | | | | | | |
| Manufacturing Labor | (962) | (734) | (1,572) | (1,474) | (1,026) | (618) | (963) | (613) | (7,560) |
| OH Labor | (53) | (54) | (54) | (54) | (54) | (58) | (58) | (58) | (446) |
| Freight Contract Labor | (131) | (139) | (139) | (139) | (138) | (131) | (131) | (131) | (1,080) |
| Fleet Labor | (127) | (128) | (128) | (128) | (128) | (127) | (127) | (127) | (1,020) |
| Warehouse Labor | (3) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (12) |
| Variable Selling Labor | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (81) |
| Fixed Labor | - | (288) | - | (288) | - | (274) | - | (274) | (1,124) |
| G&A Labor | (59) | (75) | (75) | (75) | (75) | (59) | (59) | (59) | (535) |
| Select Payroll | (195) | (130) | (175) | (100) | (138) | (63) | (138) | (63) | (208) |
| People Expense | (581) | (898) | (583) | (668) | (546) | (795) | (524) | (795) | (1,002) |
| Variable Mfg Expense - Utilities | (52) | - | - | (165) | - | (65) | - | (165) | (5,568) |
| Fixed Mfg Expense w/o Labor | (159) | (159) | (159) | (159) | (159) | (159) | (159) | (159) | (436) |
| Other Cost of Goods | (141) | (141) | (141) | (141) | (61) | (61) | (61) | (61) | (1,276) |
| Route Fleet | (75) | (75) | (75) | (75) | (74) | (74) | (74) | (74) | (608) |
| Occupancy - rent and taxes | (115) | - | - | (115) | - | - | - | - | (597) |
| Warehouse | (82) | (82) | (82) | (82) | (81) | (81) | (81) | (81) | (230) |
| Royalties | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (654) |
| Fixed Marketing | | | | | | | | | (15) |
| Variable Selling Expense | (28) | (28) | (28) | (28) | (29) | (29) | (29) | (29) | (230) |
| Fixed Selling Expense | (79) | (79) | (79) | (79) | (79) | (79) | (79) | (79) | (636) |
| General and Administration | (31) | (31) | (31) | (31) | (31) | (31) | (31) | (31) | (243) |
| Freight | (50) | (49) | (41) | (37) | (37) | (36) | (36) | (38) | (322) |
| Corporate OH Allocation | (96) | (106) | (35) | (101) | (37) | (101) | (35) | (101) | (574) |
| Non Cash Items | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 230 |
| Deposit | | (350) | | | | | | 350 | |
| Disbursements | (2,425) | (2,705) | (2,800) | (3,309) | (2,699) | (2,094) | (1,646) | (1,848) | (18,947) |
| Net Cash Flow | $ (498) | $ (763) | $ (849) | $ (1,349) | $ (739) | $ (55) | $ 519 | $ 342 | $ (2,812) |
| Cumulative | $ (498) | $ (1,261) | $ (2,110) | $ (3,479) | $ (3,618) | $ (3,673) | $ (3,153) | $ (2,812) | |
| **Admin Costs** | | | | | | | | | |
| Debtors Professionals | | | | | | | | | $ - |
| Unsecured Creditors Professionals | | | | | | | | | (50) |
| DIP Lender Professionals | | | | (50) | | (10) | | (50) | (100) |
| Court Fees | | | | | | | | | (20) |
| DIP Financing Fees + Term Interest | (250) | | (150) | (24) | | | (150) | (24) | (598) |
| Total Admin Costs | (260) | | (150) | (74) | | (10) | (150) | (124) | (768) |